IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Criminal No. 19-62 |
| ) | Civ. A. No. 22-1277 |
| ) | Judge Nora Barry Fischer |
| ERICK ALEXANDER MARTINEZ, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Presently before the Court is a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, ("Motion"), filed by pro se Defendant Erick Alexander Martinez ("Defendant") (Docket No. 273), which is opposed by the Government. (Docket No. 284). Defendant alleges ineffective assistance of counsel and seeks to vacate the sentence of 78 months' imprisonment and four (4) years' supervised release imposed by this Court following his conviction for conspiracy to possess with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846. (Docket Nos. 273; 286). The Government counters that his Motion should be denied without a hearing as his arguments are clearly undermined by the existing record and are otherwise without merit. (Docket Nos. 284; 288). After careful consideration of the parties' positions and for the following reasons, Defendant's § 2255 Motion [273] will be denied.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

On February 26, 2019, a federal grand jury returned an Indictment against the Defendant charging him and two co-defendants, Brandon Winters and Eduard Guzman Rijo, with one count of conspiracy to possess with intent to distribute and distribute one (1) kilogram or more of heroin and four hundred (400) grams or more of fentanyl in violation of 21 U.S.C. § 846. (Docket No.

1

51).  Winters was also charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and 841(b)(1)(A)(iv). (*Id*.).  Defendant's arraignment was held on March 13, 2019, at which time he pled not guilty.[1] (Docket Nos. 79; 80). Following the arraignment, the Court granted seven (7) motions for extensions of time to file pretrial motions by Defendant and separately granted another ten (10) motions filed by his co-defendants requesting the same extensions. (Docket Nos. 76, 81, 85, 87, 89, 93, 96, 98, 103, 106, 120, 125, 135, 154, 163, 166, and 169).  The Government did not seek any continuances and the Court's Orders noted that each of the extensions provided to the Defendants served the interests of justice and excluded the entire period of time under the Speedy Trial Act from the March 13, 2019 arraignment in Defendant's case through the date of his change of plea hearing on May 12, 2020.  (Docket Nos. 77, 82, 86, 88, 90, 94, 97, 99, 104, 107, 121, 126, 136, 155, 164, 167, 170).[2]

The change of plea hearing was held on May 12, 2020 by videoconference.[3] (Docket Nos. 174-176).  At the change of plea hearing, as is the Court's practice, it conducted an extensive colloquy with Defendant to confirm that he was competent, that he understood the Constitutional and other rights that he was waiving by entering a guilty plea, and that he was knowingly and voluntarily pleading guilty. (Docket No. 278).  To that end, Defendant reported that he is a high school graduate with no mental or physical ailments, and that he was not impaired by drugs or alcohol at the hearing. (Docket No. 278 at 5-6, 36).  Additionally, Defendant testified that he

---

[1] Defendant was initially arrested and charged under a criminal complaint on February 1, 2019 but was released on bond on February 4, 2019.  (Docket Nos. 37; 47-49).
[2] The Court further notes that these extensions were appropriate given that a portion of the proceedings took place during the COVID-19 pandemic and Defendant was released on bond in New York, where there were a high number of Covid cases, hospitalizations, and deaths. (Docket Nos. 50; 278 at 3). This made travel to and from Pittsburgh potentially unsafe for Defendant.
[3] The use of videoconference was authorized by the Administrative Order issued by Chief Judge Mark R. Hornak at Misc. No. 2:20-mc-394-MRH, due to the COVID-19 pandemic and the Court found that Defendant knowingly and voluntarily waived his right to an in-person proceeding and consented to the use of videoconferencing. (Docket Nos. 174; 175).

understood that by pleading guilty he waived his rights to various defenses, such as challenging the Indictment based on the Constitution.

> THE COURT: Moreover, if you plead guilty to this charge, do you understand you're giving up defenses you might have had to the offense charged, including defenses or challenges to the indictment based on the Constitution and you won't be able to raise those defenses or challenges after you plead guilty? Do you understand all of that?
>
> THE DEFENDANT: Yes.

(Docket No. 278 at 19-20). Defendant further stated that he had sufficient time to speak with his attorney, and that he was satisfied with his attorney's work.

> THE COURT: . . . Let me ask you this: have you had sufficient time to talk about your case with your attorney, Mr. Dresbold?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the job he's done for you so far?
>
> THE DEFENDANT: Yes.

(Docket No. 278 at 13). He also affirmed that he had the opportunity to read and review the Indictment with his attorney, that he understood the Indictment and the nature of the charge, and that he had no additional questions about the Indictment or the charge.

> THE COURT: Okay. Mr. Martinez, have you been provided with a copy of the indictment that outlines the charge against you? Did you ever get a copy of the indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Did you have an opportunity to read it through?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you also go over it with [your attorney] Mr. Dresbold?

3

>THE DEFENDANT: Yes.
>
>THE COURT: And specifically, did you discuss with him the charge in the indictment to which you intend to plead guilty?
>
>THE DEFENDANT: Yes.
>
>THE COURT: And to the extent you had any question, comment, or concern about that, did you have a chance to talk to your attorney about that?
>
>THE DEFENDANT: Yes.
>
>. . .
>
>THE COURT: So you understand you're charged at Count One of the indictment and may plead guilty to one count of conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i), and 841(b)(1)(A)(vi), in violation of Title 21, United States Code, Section 846, for conduct occurring in and around January of 2019? You understand that that is the nature of the charge, Mr. Martinez?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Once again, do you have any questions for either your attorney or the Court about this charge?
>
>THE DEFENDANT: No.

(Docket No. 278 at 14-15).

Defendant confirmed that he understood the potential statutory penalties included a mandatory period of incarceration of 10 years and up to life imprisonment. (Docket No. 278 at 21-23). The prosecutor noted that the quantity of controlled substances was at least 1.2 kilograms but less than 4 kilograms of converted drug weight for a base offense level of 32 and with a three-level reduction for acceptance of responsibility, his total offense level would be 29. *(Id*. at 26). After considering Defendant's criminal history category of I, the prosecutor estimated that the

advisory guidelines range would be 87 to 108 months' incarceration. (*Id*.). He added that Defendant remained subject to the mandatory minimum of 120 months' incarceration unless he qualified for the safety valve. (*Id*.). Defense counsel stated that he generally agreed with the prosecutor except that he may oppose the drug quantity and conversion of fentanyl and heroin and argue for a base offense level of 30. (*Id*.). With all of that said, Defendant admitted under oath that he understood these were estimates and that no one had promised or predicted his sentence at that time.

> THE COURT: Has anyone made any kind of a promise to you that's caused you to want to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone made any kind of a prediction or a promise to you as to what your actual sentence will be?
>
> THE DEFENDANT: No.

(Docket No. 278 at 35-36).

The prosecutor next detailed the evidence of the conspiracy, Defendant's role, and the type and quantity of drugs involved in the offense. (Docket No. 278 at 30-33). Additionally, Defendant and his counsel confirmed that they had reviewed a written copy of the factual summary of the evidence which had been provided in advance of the proceeding by the prosecutor. (Docket No. 278 at 33). The factual summary was then read into the record by the prosecutor, as follows:

> Your Honor, the government's evidence would show that in late 2018, the Pennsylvania State Police and the FBI began receiving information regarding the cocaine and heroin distribution associated with the co-defendant in this case, identified as Brandon Winters, along with his co-conspirators, and as part of that investigation, the case agents began extensive surveillance at apartment 205, which is located at 220 Heinz Street. That building is known commonly as Heinz Lofts Apartments.
>
> The government's evidence would show that co-defendant

Brandon Winters and his co-conspirators, including the defendant, utilized apartment 205 within Heinz Lofts Apartments in Pittsburgh.

On January 25, 2019, Chief Magistrate Judge Eddy issued a search warrant for apartment 205 within Heinz Lofts Apartments. Thereafter, on January 30, 2019, agents were conducting both electronic and physical surveillance at apartment 205 within the Heinz Lofts, believing that co-defendant Winters was expecting a resupply of narcotics that day.

During that surveillance session, agents observed the defendant and his alleged co-conspirators: Eduard Rijo -- spelled E-D-U-A-R-D, last name, Rijo, R-I-J-O -- and Brandon Winters, coming and going to and from apartment 205, oftentimes together. For example, at approximately 2:00 a.m. on January 30th, agents observed co-defendant Rijo walk out of apartment 205, walk to the stairway of the building, and let the defendant into the common hallway at Heinz Lofts.

Agents observed the defendant and co-defendant Rijo walk into apartment 205 together. Shortly thereafter, the defendant was observed leaving the apartment, walking back down the stairway, and entering his black Nissan Maxima, which is registered to him, and depart the area.

Several hours later, around 1:20 in the afternoon that same day, case agents observed co-defendants Winters and Rijo leaving apartment 205 together. They returned that day around 3:34 p.m. carrying groceries. And shortly after that, around 4:27 p.m., agents observed co-defendant Rijo walk out of apartment 205 and exit toward the elevator, which leads to the parking garage for building 220.

Around the same time, agents observed the defendant drive his Nissan Maxima into the garage for building 220.

Shortly thereafter, co-defendant Rijo left the garage and walked back into apartment 205, pulling a multicolored roller duffel bag. As co-defendant Rijo walked into apartment 205 with the roller bag, investigators observed the defendant drive his Nissan Maxima out of the parking garage, and park the vehicle in a visitors' parking lot. Agents then observed the defendant walk into the building and into apartment 205.

Once the defendant and co-defendants Winters and Rijo were all believed to be inside of apartment 205, agents made entry

6

> pursuant to the search warrant. There, agents found co-defendant Winters, Mr. Rijo, and the defendant within the living room area of the apartment.
>
> Over $250,000 in United States currency was scattered in the living room area, and it appeared to the agents that the defendants had been handling or counting the currency prior to their entry into the apartment.
>
> Nearby, on the floor of the kitchen area, agents found the same multicolored roller duffel bag, which co-defendant Rijo was observed pulling when he entered apartment 205 shortly beforehand.
>
> Inside of that roller duffel bag, investigators recovered approximately 1,500 bricks -- which is the equivalent of roughly 75,000 individual dosage units – containing suspected heroin/fentanyl mixtures. Through a search of Mr. Martinez's black Nissan Maxima, agents uncovered an extensive hidden trap compartment, and the government would prove that that hidden trap compartment is a tool that's commonly used by narcotics traffickers and was intended to be utilized by Mr. Martinez to smuggle narcotics and/or the financial proceeds from the distribution of narcotics.
>
> Subsequent chemical testing of the 1,500 bricks of suspected heroin/fentanyl confirmed the presence of both heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, and that the aggregate weight of those mixtures was determined to be more than 1 kilogram of heroin and consequently, more than 400 grams of fentanyl.
>
> Through expert testimony, the government would prove that the quantity of seized heroin/fentanyl mixtures was undoubtedly possessed for further distribution.
>
> And that is all.

(Docket No. 278 at 29-33). The Court noted that Defendant was "listening very intently" to the prosecutor's factual recitation and asked if he wished to make any additions or corrections to which he declined.

> THE COURT: . . . Now, Mr. Martinez, having gone over it with your own attorney and having just heard Mr. Moschetta go through

7

>the facts of your case, do you agree with what he said as to the factual summary? Are there any additions or corrections you want to make?
>
>THE DEFENDANT: No, Your Honor.

(Docket No. 278 at 33).

During the proceeding, the parties reported that they did not have a plea agreement and the case proceeded through the presentence process. (Docket No. 278 at 20). A Final Presentence Investigation Report ("PIR") was disclosed to the Court on July 24, 2020. (Docket No. 191). The Court issued its Tentative Findings and Rulings on August 14, 2020, wherein it noted that there were no disputes as to the drug quantity and also accepted the Probation Office's conclusion that the base offense level was 30 because the converted drug weight attributable to Defendant was at least 1,000 kilograms but less than 3,000 kilograms. (Docket No. 200). At the time, the Court found that the advisory guidelines range was 120 months' incarceration as the statutory mandatory minimum penalty exceeded the otherwise applicable guidelines range of 70-87 months' imprisonment. (Docket No. 200). Defendant subsequently objected to the PIR and the Tentative Findings and argued that the safety valve provision under 18 U.S.C. § 3553(f) should be applied in this case. (Docket Nos. 241; 243). As such, the Court continued the sentencing and ordered briefing from the parties. (Docket Nos. 241; 243; 253; 257).

Ultimately, the Court did not resolve their disputes because on October 28, 2021, the parties entered into a sentencing agreement wherein they agreed to Defendant's eligibility for the safety valve under 18 U.S.C. §3553(f) and to a stipulated sentence under Rule 11(c)(1)(C) of 78 months' imprisonment and four (4) years' supervised release. (Docket Nos. 289 at 12; 262 at 1). A Supplemental Addendum to the PIR was filed to reflect their stipulations. (Docket No. 262). The Court also issued Supplemental Tentative Findings and Rulings. (Docket No. 268).

At the sentencing hearing on December 15, 2021, no objections were lodged to the PIR, the Addenda, nor the Court's Supplemental Tentative Findings and Rulings and both parties advocated that the Court should accept their agreed-upon sentence. (Docket No. 289). During the sentencing, the Court confirmed that Defendant understood the agreement, reviewed it with his attorney, and consented to the specific sentence under Rule 11(c)(1)(C). (Docket No. 289 at 14). Defendant further reported that he had read the PIR, the Addenda, and both sets of Tentative Findings, and that he had no questions as to those materials. (Docket No. 289 at 20-21). Accordingly, the Court accepted the parties' recommendations and sentenced him to 78 months' imprisonment and 4 years' supervised release. (Docket No. 272). He was also ordered to pay a $100.00 special assessment and a fine was waived. (*Id*.).

Defendant did not appeal his sentence and was directed to self-report to FCI Fort Dix, where he is currently serving his sentence, by February 9, 2022. (Docket No. 272). On September 7, 2022, the Defendant filed a Motion to Vacate his sentence on the grounds that he was provided ineffective assistance of counsel, as his attorney failed to challenge the sufficiency of the indictment, did not assert Speedy Trial Act violations on his behalf, and was deficient in advising the Defendant during the plea and sentencing proceedings. (Docket No. 273 at 4). The Court issued its *Miller* notice on September 8, 2022 and Defendant responded on September 20, 2022 requesting that the Court rule on the motion, as filed. (Docket Nos. 274; 275). On October 25, 2022 the Government submitted its response in opposition. (Docket No. 81). Defendant replied on November 4, 2022, raising additional claims challenging the sufficiency of the evidence against him, and the Government filed a sur-reply on November 18, 2022. (Docket Nos. 82; 88). No further briefing has been ordered and the matter is now ripe for review.

III.     **LEGAL STANDARD**

"A motion to vacate sentence pursuant to 28 U.S.C. § 2255 is the exclusive means to challenge collaterally a federal conviction or sentence." *Frazier-el v. Bureau of Prisons*, 376 F. App'x 164, 165 (3d Cir. 2010). Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255.

"A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x. 75, 78 (3d Cir. 2014). First, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness, and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (citing *Strickland*, 466 U.S. 668 at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The Supreme Court has emphasized that judicial scrutiny of defense counsel's performance is "highly deferential," and a "strong presumption" exists that "counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Generally, a court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Tolliver*, 800 F.3d at 140-41. If a hearing is not held, the court must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). In the Court's view, Defendant's motion can be decided after review of the records in the case, and thus a hearing is not necessary.

### IV.  DISCUSSION

Defendant contends that he was provided ineffective assistance of counsel for several reasons. (Docket Nos. 273; 286). First, he argues that his attorney should have challenged the Indictment because it allegedly does not include a separate count identifying the objective of the conspiracy and does not include a specific penalty. (Docket No. 273 at 4). Second, Defendant states his attorney should have argued that the delays in the case constituted violations of the Speedy Trial Act. (Docket No. 273 at 5). Third, Defendant maintains that his counsel failed to challenge the quantity of illicit substances attributed to him and promised him a lower sentence. (Docket No. 273 at 8). Defendant concludes that, but for his counsel's errors, the outcome of the case would have been different. (Docket No. 273 at 7).[4] The Government counters that

---

[4] In his Reply, Defendant purportedly raises an additional issue regarding the sufficiency of the evidence against him which was not argued in his initial motion. (Docket No. 288 at 1). Defendant was provided an opportunity

11

Defendant's claims are undermined by the record in this case and that he was properly sentenced pursuant to the terms of the Rule 11(c)(1)(C) sentencing agreement. (Docket Nos. 284; 288).

Having reviewed the parties' arguments in light of the relevant portions of the record, including the transcripts of the plea and sentencing hearings, the Court concurs with the Government's position that Defendant's § 2255 Motion must be denied. The Court's rationale follows, starting with the alleged ineffective assistance of counsel during the plea and sentencing phases of his case.

In this Court's estimation, the record directly contradicts Defendant's claims that he was provided ineffective assistance of counsel and prejudiced by his counsel's advice and performance during the change of plea and sentencing hearings. The Supreme Court has held that a defendant's statements, made under oath in open court, "carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also United States v. James*, 928 F.3d 247 (3d Cir. 2019). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). With that said, the United States Court of Appeals for the Third Circuit has repeatedly held that a thorough colloquy, where the Court provides the defendant with the maximum potential penalties and advises him that the sentencing guidelines are advisory, cures any potential prejudice arising out

---

to submit an amended motion with additional claims under the Court's *Miller* Order but declined to do so and therefore waived this argument. (Docket No. 274 (citing *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999)). Regardless, the Court agrees with the Government that challenges to the sufficiency of the evidence are improper under 28 U.S.C. § 2255 and that any such claims are also procedurally defaulted and unsupported by the record. *Sunal v. Large*, 332 U.S. 174, 179 (1947) ("the writ is not designed for collateral review of. . . .the existence of any evidence to support the conviction."). Therefore, the Court need not further address these claims.

of counsel's mistaken advice regarding a possible sentence. *See*, *e.g.*, *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (citing *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted")); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

Here, Defendant asserts that he was unaware of the amount of the narcotics at issue in this case and alleges that his attorney did not discuss sentencing guidelines with him and promised him a lower sentence than what was ordered by the Court. (Docket No. 273 at 8). However, as the Court noted during the plea and sentencing hearings, Defendant is a high school graduate suffering from no mental disabilities, substance abuse or physical issues, and was found to be competent to plead guilty and knowingly and voluntarily accepted the terms of the Rule 11(c)(1)(C) sentencing agreement. (Docket No. 278 at 5-6, 36). Contrary to his post-hoc assertions, Defendant testified during the change of plea hearing that he was not promised any sentence; admitted that his attorney had "talked about the guidelines and how they could apply to" his case; and offered no corrections or additions to the prosecutor's factual recitation of the offense. (Docket No. 278 at 25; 30-33; 35-46). Indeed, the factual basis for the offense included specific details about the drug quantities including that he was observed rolling a luggage bag from his car into the Heinz Loft Apartments which contained 1,500 bricks of fentanyl/heroin or more than 1 kilogram of heroin and 400 grams of fentanyl and that more than $250,000 in cash was observed in the apartment when law enforcement entered. (*Id.*). The attorneys also briefly discussed a potential dispute as to the drug

13

quantity and advisory guidelines range during the plea hearing with the prosecutor estimating that his base offense level was 32 and his counsel advocating for a base offense level of 30. (*Id.* at 26-27). This dispute was resolved by the Probation Office in Defendant's favor as it found that the base offense level was 30 and the parties' subsequent negotiations resulted in the reductions for the safety valve and the Rule 11(c)(1)(C) sentencing agreement. (Docket Nos. 191; 289 at 15-16).

At the sentencing hearing, the Court thoroughly discussed the Rule 11(c)(1)(C) sentencing agreement with Defendant and he agreed to the terms, including that the sentence of 78 months' incarceration and 4 years' supervised release would be imposed by the Court. (Docket No. 270-1). He also received substantial benefits under the agreement as the Government conceded that the safety valve applied such that he was no longer subject to the mandatory minimum term of 120 months' incarceration. *See e.g., United States v. Gardenhire*, Cr. No. 15-87, 2020 WL 6826582, at *4 (W.D. Pa. Nov. 20, 2020) (rejecting claim that defendant was prejudiced as he knowingly and voluntarily accepted Rule 11(c)(1)(C) plea agreement which significantly limited his sentencing exposure). All told, the record reflects that Defendant fully understood the scope of his rights, the charges against him and the consequences of pleading guilty and specifically agreed to the sentence imposed of 78 months' incarceration and 4 years' supervised release. As such, Defendant's § 2255 Motion must be denied to the extent that he raises claims that his counsel was ineffective during the plea and sentencing hearings which are plainly refuted by the record.

With respect to Defendant's remaining claims that his counsel provided ineffective assistance by failing to raise certain arguments seeking dismissal of the Indictment, the Court holds that defense counsel performed reasonably because any such challenges would have been meritless, and "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Bui*, 795 F.3d 363, 366–67 (3d

Cir. 2015) (citing, *United States v. Sanders,* 165 F.3d 248, 253 (3d Cir.1999)). To that end, the Supreme Court has held that any contest to a defect in an indictment must be made prior to the trial or the entry of a guilty plea. *See*, *United States v. Clark,* 208 F. App'x 137, 142 n. 5 (3d Cir. 2006) (arguments concerning defects in indictment are waived if not raised before trial.). Similarly, violations of the Speedy Trial Act are waived by the entry of a guilty plea. *See e.g.*, 18 U.S.C. § 3162(a)(2) ("[f]ailure of a defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."); *Washington v. Sobina*, 475 F.3d 162, 164 (3d Cir. 2007) ("a speedy trial issue is non-jurisdictional and is therefore waived by an unconditional guilty plea."). At the change of plea hearing, Defendant specifically acknowledged that he understood that he was waiving his rights to raise defenses to the conspiracy charge, including challenges to the Indictment, and the Court found that Defendant was competent to waive those rights. (Docket No. 278 at 19-20). Since Defendant has failed to demonstrate that he was provided ineffective assistance during the change of plea proceeding, he cannot collaterally attack his conviction based on an alleged failure to raise these arguments which were waived by his guilty plea. *See e.g., United States v. Edmonds*, Cr. No. at *7 (W.D. Pa. Jan. 18, 2017) (finding that defendant waived the right to file motion to dismiss indictment by pleading guilty and his counsel could not have provided ineffective assistance of counsel for failing to raise such an argument).

Beyond these reasons, Defendant's claims that his counsel was ineffective for not challenging the sufficiency of the Indictment and asserting Speedy Trial violations are simply not supported by the record. Indeed, the Indictment charging him, Guzman-Rijo and Winters with one count of conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl in violation of 21 U.S.C. § 846, for conduct occurring in and

around January 2019 meets all of the requirements set forth by the Federal Rules and the Third Circuit. *See United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (citing *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012)) (an indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.").

Next, Defendant cannot demonstrate a Speedy Trial violation because all of the time between his arraignment and his change of plea hearing, from March 13, 2019 to May 12, 2020, was properly excluded upon motions filed by his own counsel and that of his co-defendants. *See United States v. Bush*, 741 F. App'x 110, 117 (3d Cir. 2018) (citing *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993)) (a "continuance [is] a valid exclusion from the speedy trial clock for one co-defendant, it [is] valid as to all co-defendants."). He is likewise unable to establish that any purported delays between his plea and sentencing hearings justified dismissal of the Indictment because the Sixth Amendment right to a speedy trial does not apply after a defendant has pled guilty and the presumption of innocence no longer applies. *See Betterman v. Montana*, 578 U.S. 437, 448 (2016) (holding that the Sixth Amendment right to a speedy trial applies during the period of time between arrest or indictment through conviction but "does not apply to delayed sentencing"). Thus, Defendant's remaining claims that his counsel was ineffective must be denied.

For all of these reasons, the Court finds that there is no basis in law or fact justifying the extraordinary relief of setting aside Defendant's valid conviction and sentence under § 2255. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Accordingly, his motion is denied.

## V. CONCLUSION

Based on the foregoing, Defendant's motion to vacate his sentence under 28 U.S.C. §

2255 [273] is denied, with prejudice. The Court also holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior United States District Judge

Date:        January 5th, 2023

cc/ecf:      All counsel of record

           Erick Martinez
           Reg. No. 39329-068
           FCI Fort Dix, Box 2000
           Joint Base MDL, New Jersey 08640
           (via first class mail)